**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR19-4088-LTS |
| vs. | |
| MONEE YODPRASIT, | **MEMORANDUM OPINION AND ORDER ON REPORT AND RECOMMENDATION** |
| Defendant. | |

## I. INTRODUCTION

This matter is before me on a Report and Recommendation (R&R) (Doc. No. 49) in which the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge, recommends that I deny defendant Monee Yodprasit's motion (Doc. No. 25) to suppress. Yodprasit and the Government filed timely objections to the R&R. Doc. Nos. 50, 51.

## II. BACKGROUND

### A. Procedural History

A criminal complaint was issued against Yodprasit on November 7, 2019, and he was arrested the same day. Doc. Nos. 2, 6. On November 19, 2019, the grand jury returned an indictment (Doc. No. 13) charging Yodprasit with six counts: (1) conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 841(b)(1)(C), 846 and 851; (2) possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 851; (3) possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 851; (4) possession with intent to distribute heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 851; (5) possession of a firearm during and in

furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1) and (6) possession of a firearm by a felon in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2).

On January 2, 2020, Yodprasit filed a motion (Doc. No. 25) to suppress evidence stemming from the search of a package that was mailed to his residence but diverted by postal workers for a drug-dog sniff. The Government filed a resistance (Doc. No. 30) on January 9, 2020, and Yodprasit filed a reply (Doc. No. 36) on January 20, 2020. Judge Mahoney held a hearing on January 24, 2020. Doc. No. 38. At the hearing, the Government presented testimony from Postal Inspector Ryan Brandt and Yodprasit testified on his own behalf. *Id.* Judge Mahoney admitted Government Exhibits 1, 2 and 3. *Id.*

Judge Mahoney filed her R&R (Doc. No. 49) on February 12, 2020. Yodprasit filed his objections (Doc. No. 50) on February 25, 2020, and the Government filed its objection (Doc. No. 51) on February 26, 2020. Trial is scheduled to begin April 6, 2020. *See* Doc. No. 44.

### B.    *Relevant Facts*

Judge Mahoney summarized the following relevant facts in her R&R based on the exhibits and testimony presented during the suppression hearing:

> In October 2019, Postal Inspector Ryan Brandt began investigating suspicious packages being mailed to a particular address in Sioux City. He first started to look into the address after seeing it appear multiple times on daily reports he receives to assist him in identifying packages containing narcotics, which list all packages mailed to Iowa from California, paid for in cash, and of a certain weight. After investigating further, Inspector Brandt believed that the packages were sent from fictitious businesses, so he initiated a mail watch on the Sioux City address to be alerted of any packages sent to the address.
>
> On October 23, 2019, Inspector Brandt learned that a package had been mailed from Temple City, California, to the Sioux City address. He alerted Drug Enforcement Agency (DEA) Task Force Officer Alex O'Dell, who conducted surveillance of the address on October 25, 2019, the date the package was delivered. Officer O'Dell observed the postal worker hand

the package to Yodprasit for delivery, after which Yodprasit took the package inside the house. Officer O'Dell conducted surveillance on the house on other occasions in October 2019, and he observed Yodprasit coming and going from the house on multiple occasions, as well as other family members. Inspector Brandt learned from Officer O'Dell that the Yodprasit family was associated with the address.

On Wednesday, October 30, 2019, another package was sent to the Sioux City address from California, with an estimated arrival date of Saturday, November 2, 2019. On October 31, 2019 (prior to the package's arrival in Sioux City), Inspector Brandt ordered postal workers in Sioux City to forward the package to his office in Urbandale, Iowa, (in the Des Moines area) once it arrived in Sioux City. Inspector Brandt believed that he had reasonable suspicion to divert the package after reviewing a photo of the package taken by mail-sorting equipment in California.

The package arrived by plane in Sioux Falls, South Dakota, on the morning of Friday, November 1, 2019, and was transported by truck to Sioux City that same day (a little more than an hour's distance). When postal workers in Sioux City received the package, they did not scan it, so anyone with the package's tracking number would not have seen that the package had arrived in Sioux City. Postal workers sent the package to Inspector Brandt as instructed. The package was in transit to Des Moines on Saturday, November 2 (which is about a three-hour drive from Sioux City); it did not move on Sunday, November 3, as most packages are not delivered on Sundays and few postal workers work; and the package arrived in Inspector Brandt's office in Urbandale around midday on Monday, November 4. When Inspector Brandt examined the package in person, he observed spray foam leaking out of the package, which he knew to be used by drug traffickers to mask the smell of drugs. He contacted the Des Moines Police Department to arrange for a K-9 to sniff the package. The drug-dog sniff occurred the next day, Tuesday, November 5, at around 2:15 p.m. *See* Doc. 42-1 at 5. The dog positively alerted to the presence of drugs in the package. On Wednesday, November 6, Inspector Brandt applied for and received a search warrant for the package. *See* Doc. 42. When he opened the package, he confirmed it contained drugs (specifically, methamphetamine). On Friday, November 8, Inspector Brandt received a second search warrant, this time for the Sioux City house, based on the methamphetamine found in the seized package and the similar packages that had been delivered to the house in the past. *See* Doc. 42-1. Officers searched the Sioux City house that same day and discovered cocaine,

methamphetamine, heroin, firearms, and $24,000 cash. Officers arrested Yodprasit, and the seized package was never delivered.

. . .

At the suppression hearing, Inspector Brandt initially testified that when he diverted the package, the following facts gave him reasonable suspicion that the package contained drugs: the package was mailed from California, a drug-source state; the package was heavily taped; the package was sent via three-day priority mail (he testified that drugs are often sent via express or priority mail, the first of which is overnight and the latter of which takes two to three days); the name of the recipient of the package, "Johnathan Lee," was not associated with the Sioux City address; the sender of the package, "LAJR Logistics," appeared to be a fictitious company, as it was not associated with the residential address used as the return address, and it did not appear on the California Secretary of State website; and prior mailings to the Sioux City address fit the same profile. There were sixteen prior packages fitting the same profile sent to the Sioux City address previously, about three a month beginning in June 2019 (this information is included in the second search warrant, but it is unclear whether Inspector Brandt confirmed the precise details of the prior mailings before ordering diversion, or whether he relied on his general memory of the past suspicious mailings). Doc. 42-1 at 6. The prior suspicious mailings used names not associated with the Sioux City address, including "Jonathan Lee" (as opposed to "Johnathan Lee"), "John Lee," "Jimmy Lee," and "Michael Lopez," and the return address on the prior packages listed "Knight Incorporated" or "LAJR Logistics," companies Inspector Brandt believed were fictitious. See also id. Inspector Brandt could not remember which names were used on the package delivered to Yodprasit on October 25.

Inspector Brandt testified on cross-examination that although he believed LAJR Logistics to be a fictitious company prior to ordering the package's diversion, he did not look up the company's information on the California Secretary of State website until after the execution of the search warrant of the package. He added that most legitimate companies have an account with the post office; they do not fold up a printed piece of paper as a label and mail packages from the counter at the post office paying with cash, as was done here. Later in the hearing, Inspector Brandt testified again that he did not think he looked up LAJR Logistics on the California Secretary of State website until after the execution of the first search warrant, but he could not remember for certain. The first search warrant for the package includes the information about the California Secretary of

State website (so Inspector Brandt misremembered the timing of when he looked at that website). Doc. 42-1 at 4. It is unclear whether Inspector Brandt learned that the California Secretary of State website did not include information about "LAJR Logistics" prior to the package's diversion. Inspector Brandt also testified that he performed Google searches of "LAJR Logistics" and found no internet presence of the company, but he could not say for sure whether he conducted this search prior to ordering the diversion of the package. His testimony on the whole indicates that he was aware prior to ordering the package's diversion, however, that "LAJR Logistics" was not associated with the residential return address on the package.

Doc. No. 49 at 1–6 (footnotes omitted).

### III. APPLICABLE STANDARDS

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of*

*Bessemer City*, 470 U.S. 564, 573–74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).  However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a de novo or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).


## IV.    DISCUSSION

I will first address Yodprasit's objections to the factual findings in the R&R.  Second, I will address the Government's objection to Judge Mahoney's finding that Yodprasit had a legitimate expectation of privacy in the package at issue.  Third, I will address Judge Mahoney's finding on the timing of the seizure, to which neither party has objected.  Fourth, I will address Yodprasit's objection to Judge Mahoney's finding that reasonable suspicion supported the seizure of the package.  Finally, I will address Judge Mahoney's finding on the reasonableness of the length of the seizure, to which neither party has objected.


### A.    *Objections to Findings of Fact*

Yodprasit raises three objections to Judge Mahoney's[1] factual findings.  First, he argues that that Inspector Brandt's testimony does not support Judge Mahoney's finding that, before he diverted the package, he had reason to believe it listed a fictitious company in the return address.  Doc. No. 50 at 2.  Yodprasit argues that Inspector Brandt's belief is unsupported because he did not look up the company's information on the California

---

[1] Defendant's counsel repeatedly refers to Judge Mahoney as "the magistrate."  Since 1990 the position Judge Mahoney holds has had the title of "Magistrate Judge."  *See* Judicial Improvements Act of 1990, 104 Stat. 5089 (Dec. 1, 1990).

Secretary of State website until after the execution of the search warrant of the package. *Id.* However, Judge Mahoney found that "Inspector Brandt testified on cross-examination that although he believed LAJR Logistics to be a fictitious company prior to ordering the package's diversion, he did not look up the company's information on the California Secretary of State website until after the execution of the search warrant of the package." Doc. No. 49 at 5. She also specifically found that "Inspector Brandt did not know the information from the California Secretary of State's website at the time of the seizure." *Id.* at 12 n.9.

Judge Mahoney based her finding that Inspector Brandt believed LAJR Logistics was a fictitious company before he diverted the package on other testimony. As Judge Mahoney acknowledged, Inspector Brandt's testimony indicates that he was aware that LAJR Logistics was not associated with the return address on the package prior to ordering the package's diversion. *Id.* at 6. Inspector Brandt testified that he believed LAJR Logistics was fictitious upon looking at a picture of the package and seeing that the label was a folded up piece of paper taped on the package. Doc. No. 47 at 45. He testified that most legitimate companies have postal accounts and do not tape a label to a parcel and then hand it across the counter at a post office. *Id.* Inspector Brandt testified that he looked up the return address and discovered that it was associated with a one-story residential home. *Id.* at 58. He also testified he searched for LAJR Logistics through Google but found nothing, although he was uncertain whether he did this before or after the parcel was diverted. *Id.* at 71. While the timing of some events is not entirely clear, I agree with Judge Mahoney that Inspector Brandt's testimony demonstrates he was aware LAJR Logistics was not associated with the residential return address on the package before he diverted the package. Yodprasit's first factual objection is overruled.

Second, Yodprasit argues that Inspector Brandt's testimony does not support Judge Mahoney's finding that he had reason to believe the addressee on the package, "Jonathan Lee," was a fictitious person. Doc. No. 50 at 2. Yodprasit argues that Inspector Brandt testified that he had no way of knowing that a Jonathan Lee did not live at the Sioux City

address.  *Id.*  However, Inspector Brandt testified that he or Officer O'Dell researched whether a "Jonathan Lee" lived at Yodprasit's address and determined that it was not a name associated with the address.  Doc. No. 47 at 57, 61–62.  Inspector Brandt was not required to rule out any possibility that "Jonathan Lee" lived at Yodprasit's address to believe the name is fictitious, as Yodprasit suggests.  Inspector Brandt's belief that the name was fictitious is supported by his attempt to determine whether the name was associated with the address.  Yodprasit's second factual objection is overruled.

Third, Yodprasit argues that Inspector Brandt's testimony does not support Judge Mahoney's finding that the package was heavily taped.  Doc. No. 50 at 3.  Yodprasit argues that this was only Inspector Brandt's subjective belief, and not supported by a policy or definition from the postal service about what constitutes heavy taping.  *Id.* Judge Mahoney credited Inspector Brandt's testimony that based on his training and experience, the taping at the seams of the package constituted heavy taping.  Doc. No. 49 at 4 n.4.  Based on my de novo review of the record, I agree with this finding. Yodprasit's third factual objection is overruled.

## B.      *Legitimate Expectation of Privacy in the Package*

### 1.      *Judge Mahoney's Analysis*

To determine whether Yodprasit can challenge the seizure of the package under the Fourth Amendment, Judge Mahoney first addressed whether Yodprasit had a legitimate expectation of privacy in the package.  Doc. No. 49 at 6.  Judge Mahoney noted Yodprasit's testimony that he was the intended recipient of the package.  *Id.* at 7. He also testified that after communicating with the sender of the package, he expected it to arrive at his address on November 1 or 2, 2019, and be addressed to "Jonathan Lee." *Id.*  He also accepted a similar package from a postal worker on October 25, 2019.  *Id.* Judge Mahoney held that these factors combined establish Yodprasit's legitimate expectation of privacy in the package, despite the use of a fictitious name.  *Id.*

Judge Mahoney found that "[m]ost courts—including a judge in the Northern District of Iowa—have held that 'a defendant has standing to object to the search of a package addressed to him' at his residence 'under a fictitious name or 'alter ego.'" *Id.* at 8–9 (citations omitted). Judge Mahoney agreed with the Seventh Circuit that there are legitimate reasons an individual may want to receive a package using an alias. *Id.* at 9–10; *see United States v. Pitts*, 322 F.3d 449, 457–59 (7th Cir. 2003). Judge Mahoney distinguished the two cases the Government relied on in arguing Yodprasit's expectation of privacy in the package was unreasonable given the use of a fictitious name. Doc. No. 49 at 7–8; *see United States v. Sesay*, 837 F.3d 116 (8th Cir. 2019), *petition for cert. filed sub. nom United States v. Samaan*, No. 19-7429 (U.S. Jan. 27, 2020); *United States v. Williams*, 349 F. Supp. 3d 1007 (D. Haw. 2018). Judge Mahoney stated that *Sesay* did not involve whether a defendant has standing to challenge the seizure of a package, but rather whether a defendant has a legitimate expectation of privacy in his name as it appears in a list of names on a hotel registry. Doc. No. 49 at 8. Judge Mahoney reasoned that, unlike in this case, in *Williams* there was no evidence that the defendant was the intended recipient of a package that was not sent to the defendant's address and addressed to someone that was not shown to be a fictitious name used by the defendant. *Id.*

### 2. *The Government's Objection*

The Government objects solely to Judge Mahoney's finding that Yodprasit had a legitimate expectation of privacy in the package. Doc. No. 51 at 1. The Government argues that I have already determined in a recent decision, *Roskens v. Graham*, No. C18-71-LTS, 2020 WL 413239 (N.D. Iowa Jan. 24, 2020), that individuals do not have a reasonable expectation of privacy in packages like the one at issue in this case. Doc. No. 51 at 5. The Government urges that I apply my analysis in *Roskens* and reject Judge Mahoney's finding that Yodprasit had a reasonable expectation of privacy in the package.

### 3.    *Analysis*

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.   "[I]n order to have standing to challenge a search or seizure under the Fourth Amendment, the defendant must have a legitimate expectation of privacy in the places or objects searched [or items seized]." *United States v. Manuel Rodriguez-Arreola*, 270 F.3d 611, 616–17 (8th Cir. 2001) (citation omitted).   A reasonable expectation of privacy requires that the person "exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).   Sealed letters sent through the United States postal service are "papers" within the meaning of the Fourth Amendment.   *See Ex Parte Jackson*, 96 U.S. 727, 733 (1877); *United States v. Johnson*, 171 F.3d 601, 603 (8th Cir. 1999) (noting that Fourth Amendment applies to items placed in the mail).   However, there is no reasonable expectation of privacy to the information visible on the outside of the envelope.   *Ex Parte Jackson*, 96 U.S. at 733 ("Letters and sealed packages are as fully guarded from examination and inspection, except as to their outward form and weight, as if they were retained by the parties forwarding them in their own domiciles.").

At issue in *Roskens* was whether Roskens had a reasonable expectation of privacy in a cellphone billing statement that was addressed to the "City of Ackley," her employer at the time, and delivered to the Ackley City Hall, although Roskens' home address was listed on the bill as the intended destination and Roskens had previously received the cellphone billing statements at her home address.   *Roskens*, 2020 WL 413239, at * 12. I found that Roskens had a subjective expectation of privacy in the billing statement because she had been receiving them at her home address and there was no evidence that she openly shared them with others.   *Id.*   However, I found that Roskens did not have a reasonable expectation of privacy in the billing statement because she was neither the addressor nor the addressee.   *Id.*   I found that "[c]ourts have held that an individual does

not have a legitimate expectation of privacy in mail if he or she is neither the sender nor the recipient listed." *Id.*

*Roskens* is not determinative on the issue of whether Yodprasit had a reasonable expectation of privacy in this package. The listed recipient on the mailing in *Roskens* was a real third party, the City of Ackley, and there was no argument presented that the "City of Ackley" was Roskens' alias. Most of the cases cited in *Roskens* address whether an individual has a reasonable expectation of privacy in mail addressed to a real third party. *See Murphy v. Morris*, 849 F.2d 1101, 1106 (8th Cir. 1988) (Murphy cannot claim a legitimate expectation of privacy in mail that was addressed and sent to another inmate); *United States v. Smith*, 39 F.3d 1143, 1145 (11th Cir. 1994) (Smith had no reasonable expectation of privacy in a letter that was addressed to a third party, although the third party had agreed to give him the letter upon delivery); *United States v. Pierce*, 959 F.2d 1297, 1303 (5th Cir. 1992) (Pierce had no reasonable expectation of privacy in a package that he attempted to disassociate himself as part of his defense and that was addressed and delivered to a third party); *United States v. Koenig*, 856 F.2d 843, 846 (7th Cir. 1988) (Graf had no reasonable expectation of privacy in a package that was addressed and delivered to a third party); *United States v. Givens*, 733 F.2d 339, 342 (4th Cir. 1984) (a defendant has no reasonable expectation of privacy in a package sent to a third party, although the package's contents were ultimately intended for the defendant).

Here, the package was not addressed to a third party. Rather, it was addressed to a fictitious name used by Yodprasit. Yodprasit testified that that he was the intended recipient of the package addressed to "Jonathan Lee." Doc. No. 47 at 99. He also testified that the sender told him to expect the package to be mailed to him with the name Jonathan Lee. *Id.* at 105. Inspector Brandt testified that packages were previously delivered to Yodprasit's address using the name Jonathan Lee or a variation of that name, such as John Lee, including a package that Officer O'Dell observed being delivered directly to Yodprasit at his home on October 25, 2019. *Id.* at 70–71. Inspector Brandt

also testified that "Jonathan Lee" was not associated with Yodprasit's address. *Id.* at 57, 61–62.

The Eighth Circuit has not decided whether an individual has a reasonable expectation of privacy in a package that was sent to his address and intended for him although the package is addressed to a fictitious name or alter ego. *See United States v. Lewis*, 738 F.2d 916, 920 (8th Cir. 1984) (assuming without deciding that Lewis had standing to assert a Fourth Amendment challenge to the search of a mailbox bearing the name "David Woods" and its contents[2]); *see also United States v. Sanchez*, No. CR98-4033-MWB, 1999 WL 33657684, at * 4 (N.D. Iowa Feb. 23, 1999) (finding that Sanchez had a reasonable expectation of privacy in a package addressed to a fictious name used by him at his residence, based, at least in part, on the government's concession on the issue), *report and recommendation adopted*, No. CR98-4033-MWB, Doc. No. 31 (N.D. Iowa Mar. 16, 1999), *aff'd*, 205 F.3d 1349 (8th Cir. 1999) (per curiam) (not addressing standing).

Courts that have ruled on the issue are split on whether an individual has a reasonable expectation of privacy in a package sent to him at his address using a fictitious name.[3] Some courts have held that "the expectation of privacy for a person using an

---

[2] In dicta, the Eighth Circuit stated it had "no difficulty in concluding that Lewis lacked a legitimate expectation of privacy in the mailbox and its contents and, accordingly, that he would have no standing to raise the issue concerning evidence flowing from the mailbox search . . . . A mailbox bearing a false name with a false address and used only to receive fraudulently obtained mailings does not merit an expectation of privacy that society is prepared to recognize as reasonable." *Lewis*, 738 F.2d at 920 n.2.

[3] Further, some courts have found it unnecessary to address the issue due to a lack of evidence that the name on a package was actually an alias or fictitious name used by the defendant claiming a reasonable expectation of privacy in the package. *See United States v. Stokes*, 829 F.3d 47, 52–53 (1st Cir. 2016) ("We need not decide whether a defendant ever could have a reasonable privacy interest in mail where he is not listed as addressee or addressor . . . . Stokes provides little support for his contention that an address alone can create a reasonable expectation of privacy in a parcel."); *United States v. Daniel*, 982 F.2d 146, 149 (5th Cir. 1993) ("At trial,

alias in sending or receiving mail is one that society is prepared to recognize as reasonable." *Pitts*, 322 F.3d at 459; *see also United States v. Villarreal*, 963 F.2d 770, 774 (5th Cir. 1992) ("[T]his court has made clear that individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names.") (citing *United States v. Richards*, 638 F.2d 765, 770 (5th Cir. 1981); *Pierce*, 959 F.2d at 1303 n.11 (drawing a distinction between packages addressed to the "alter ego" of a defendant, and those addressed to individuals other than the defendant)); *United States v. Garcia-Bercovich*, 582 F.3d 1234, 1238 (11th Cir. 2009) (adopting the holding in *Villarreal*); *United States v. Terriques*, 211 F. Supp. 2d 1137, 1144 (D. Neb. 2002) (finding that the defendant had a reasonable expectation of privacy because although the package was addressed to a fictitious name, evidence established that the defendant and fictitious person were the same person); *United States v. Boyd*, No. 05-10037, 2006 WL 314344, at *4 (D. Mass. Feb. 8, 2006) (holding the defendant had a reasonable expectation of privacy in a package that was addressed to a fictitious name because evidence showed the name was an alias used by the defendant and the package was intended for the defendant), *aff'd*, 298 F. App'x 25 (1st Cir. 2008) (per curiam) (not addressing standing); *United States v. Williams*, No. 10-20357, 2012 WL 6936619, at *6 (W.D. Tenn. Dec. 3, 2012) (agreeing with *Pitts* that a defendant may have a reasonable expectation of privacy in a package even though he uses fictitious sender and recipient information); *United States v. Harris*, No. 13-00376, 2015 WL 13738593, at *7 (D. Nev. Nov. 17, 2015) (agreeing with *Pitts* and holding that the defendant had a reasonable expectation of privacy in a package based on evidence that he mailed the package using fictitious names and had previously mailed similar packages using fictitious names).

---

Daniel's theory of defense that [he and the name on a package] were different persons . . . . even if we accept the Government's assertion that 'Lynn Neal' was Daniel's alias, we still question whether Daniel would have Fourth Amendment 'standing' to assert the claim, particularly when the use of that alias was obviously part of his criminal scheme.").

Other courts have held that an individual does not have a reasonable expectation of privacy in a package that is addressed to his alias. *United States v. Walker*, 20 F. Supp. 2d 971, 974 (S.D. W. Va. June 30, 1998) ("Walker is not entitled to Fourth Amendment protection when he has apparently employed the use of an alias in furtherance of his criminal scheme."); *United States v. DiMaggio*, 744 F. Supp. 43, 46 (N.D.N.Y 1990) (If "the intended recipient has opted to conceal his identity, he cannot assert a cognizable Fourth Amendment interest in the package while it is in transit because he has chosen not to announce to society that he has a legitimate claim to the sealed contents of the package."); *United States v. Lozano*, 623 F.3d 1055, 1064 (9th Cir. 2010) (O'Scannlain, concurring) ("I would hold that a defendant does not have a legitimate expectation of privacy in a package not addressed to him, even if it listed his street address and even if the addressee was his criminal alias."); *Pitts*, 322 F.3d at 460 (Evans, concurring) (would hold that a defendant does not have a legitimate expectation of privacy in a package addressed to his alias or fictitious name for illicit purposes).

While this issue is unsettled, I agree with Judge Mahoney, and the Seventh Circuit in *Pitts*, that an individual can have a reasonable expectation of privacy in a package sent to the individual using an alias or fictitious name.[4] The Seventh Circuit in *Pitts* aptly explained that "there are a number of legitimate reasons that a person might wish to send or receive a package using a *nom de plume*." *Pitts*, 322 F.3d at 457–58. The Seventh Circuit reasoned that individuals who use an alias for legitimate reasons should not lose their expectation of privacy simply because others use an alias for illicit reasons. *Id.* at 458. The court further rejected the argument that those who employ an alias for illicit

---

[4] This does not affect whether law enforcement may consider the use of fictitious addressors and/or addressees on packages in their reasonable suspicion determination. *See Pitts*, 322 F.3d at 459 n.1 ("[A]lthough a person generally maintains a reasonable expectation of privacy in mail sent or received using an alias and the use of an alias does not result in an outright loss of Fourth Amendment rights, a law enforcement officer or a court is certainly entitled to consider the use of an alias a relevant factor in deciding whether to detain mail for further investigation or issue a warrant authorizing search of a package.").

purposes, but not those who use one for legitimate reasons, lose their expectation of privacy in mailings because the "illegal contents of the package serve as an after-the-fact justification for a search" and this "turn[s] the Fourth Amendment on its head." *Id.*

Yodprasit had a subjective expectation of privacy in the package and that expectation is one that society is prepared to recognize as reasonable. Yodprasit was the intended recipient of the package, it was sent to his address and the name "Jonathan Lee" was used as his alias. Similar packages using the fictitious name or variations of it were sent to Yodprasit's address, and on one occasion Officer O'Dell witnessed Yodprasit personally accept one of these packages from a postal worker. The Government's objection on this issue is overruled.

### C.    *Timing of the Seizure*

The parties have not objected to the portion of the R&R finding that the package was seized when it arrived in Sioux City on November 1, 2019, and Sioux City postal workers acted to divert it to Inspector Brandt's office in Urbandale, Iowa, rather than deliver it to Yodprasit as scheduled. I have reviewed this finding for clear error. Judge Mahoney applied the appropriate legal standards in considering when there was a meaningful interference with any possessory interest Yodprasit had in the package. Based on my review of the record, I find no error in Judge Mahoney's finding as to when the package was seized.

### D.    *Reasonable Suspicion*

#### 1.    *Judge Mahoney's Analysis*

In determining whether reasonable suspicion supported the seizure of the package for a drug-dog sniff, Judge Mahoney first noted that, at the time of the seizure, Inspector Brandt

> [b]elieved the package listed a fictitious company in the return address and
> a fictitious person as the addressee, since neither name was associated with

their respective addresses (according to public records in the CLEAR database), and it is unusual for legitimate companies to send packages by cash with taped-on printed labels. He also knew that prior packages had been sent to the same address using similar fictitious names (such as a different first name with the last name Lee, or a variant of Jonathan with a different last name). He further knew that the package fit several characteristics common to packages containing drugs, namely, that it was mailed from California, a drug-source state; that it was heavily taped; and that it was sent via three-day priority mail.

Doc. No. 49 at 12–13 (footnote omitted). Judge Mahoney concluded that Inspector Brandt had reasonable suspicion to seize the package because "[t]he Eighth Circuit has held on numerous occasions that the combination of these and similar factors give postal inspectors reasonable suspicion to seize a package to subject it to a drug-dog sniff." *Id.* at 13 (citations omitted). Judge Mahoney rejected Yodprasit's argument that there are innocent explanations for each of the factors identified by Inspector Brandt because "[c]haracteristics consistent with innocent use of the mail can, when taken together, give rise to reasonable suspicion." *Id.* (quoting *United States v. Demoss*, 279 F.3d 632, 636 (8th Cir. 2002)).


### 2. *Yodprasit's Objection*

Yodprasit objects to Judge Mahoney's finding that Inspector Brandt had reasonable suspicion to seize the package to subject it to a drug-dog sniff. Doc. No. 50 at 3. Yodprasit argues that the Government "failed to show that the value of the claimed factors were sufficient to be seen as a reasonable suspicion." *Id.* at 4. Yodprasit further argues that "self-serving claims by a law enforcement officer seizing private property without a warrant should not be accepted merely because of the profession of the witness, and that without corroboration any factor involved in the claim of reasonable suspicion should be held to some degree of reliability and validity rather than being accepted as one of several factors that are claimed by the witness." *Id.*

### 3.    *Analysis*

"The Fourth Amendment's protection against unreasonable searches and seizures extends to packages placed in the mail." *United States v. Huerta*, 655 F.3d 806, 808 (8th Cir. 2011) (citing *Johnson*, 171 F.3d at 603). To support a seizure, "[l]aw enforcement authorities must possess a reasonable suspicion based on articulable facts that a package contains contraband before they may detain the package for investigation." *Johnson*, 171 F.3d at 603 (citing *United States v. Van Leeuwen*, 397 U.S. 249, 252–53 (1970)). "[Courts] examine the totality of the circumstances arguably supporting a determination of reasonable suspicion, evaluating those circumstances as they would be 'understood by those versed in the field of law enforcement.'" *Demoss*, 279 F.3d at 636 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). "Reviewing courts must bear in mind as well that a law enforcement officer is 'entitled to make an assessment of the situation in light of his specialized training' and experience." *Huerta*, 655 F.3d at 809 (quoting *United States v. Arvizu*, 534 U.S. 266, 276 (2002)). But "[t]he officer must be able to explain the basis of her suspicion. The officer may cite as the basis of her belief, however, facts which, alone and to an untrained eye, appear innocuous, but which, to a trained officer familiar with the methods of drug traffickers, are sufficient to establish reasonable suspicion." *United States v. Lakoskey*, 462 F.3d 965, 976 (8th Cir. 2006) (quoting *United States v. Smith*, 383 F.3d 700, 704 (8th Cir. 2004)). The Government has the burden of proving the existence of reasonable suspicion to support a warrantless seizure. *See United States v. James*, 353 F.3d 606, 613 (8th Cir. 2003).

Inspector Brandt testified that he has been a postal inspector for approximately five and a half years and has training and experience in investigating the transportation of controlled substances through the mail. Doc. No. 47 at 11–12. He testified that, based on his training and experience and a profile developed by the U.S. postal service, some of the characteristics of packages likely to contain controlled substances include packages that: (1) are sent from narcotic source states, such as California, (2) have fictitious return addresses, (3) have handwritten labels, (4) are sent to residential areas,

(5) are heavily taped on the seams or wrapped in brown paper on the outside, (6) are mailed from ZIP codes that are different from the actual ZIP code on the return address, (7) are sent through Priority Mail services and Priority Mail Express services, (8) have a valid return address, but the name on the return address does not match up with the return address and/or (9) are addressed to a name that is not associated with the delivery address. *Id.* at 13–15, 20.

At the time Inspector Brandt seized the package by diverting it to his office, he believed the package listed a fictitious company in the return address and a fictitious person as the addressee because neither name was associated with their respective addresses and it is unusual for legitimate companies to send packages over the counter at a post office and with a label that is a folded up piece of paper taped onto the package. He also knew that prior packages had been sent to Yodprasit's address using similar fictitious names. He further knew that the package was mailed from California, it was paid for in cash, it was heavily taped along its seams and that it was sent through Priority Mail. I agree with Judge Mahoney, based on my de novo review, that the characteristics of the package, as articulated and explained by Inspector Brandt and considered in light of his experience in investigating the transportation of controlled substances through the mail, amount to reasonable suspicion. Inspector Brandt explained, based on his training and experience, what factors indicate that a package may contain a controlled substance and which of those factors were present when he decided to seize the package.

The Eighth Circuit has held on numerous occasions that the combination of the factors Inspector Brandt identified and similar factors give postal inspectors reasonable suspicion to seize a package to subject it to a drug-dog sniff. *See Huerta*, 655 F.3d at 809–10 (package was heavily taped at the seams, sent from California, had a handwritten label, the purported sender was unrelated to the return address, the telephone number listed for the sender was disconnected on the day after the package was sent, a number was scratched-out on the return address and the destination address was a hotel); *Lakoskey*, 462 F.3d at 976 (package was sent via Express Mail, mailed from a drug

18

source state, had a handwritten label, the return address contained a fictitious name for the address listed and the postal inspector received a tip from another inspector to watch for drug shipments to the defendant); *United States v. Morones*, 355 F.3d 1108, 112 (8th Cir. 2004) (package was shipped priority overnight from a drug source state, paid for in cash, had no phone numbers listed and the sender and receiver had the same surname); *United States v. Logan*, 362 F.3d 530, 533–34 (8th Cir. 2004) (package was shipped second-day air delivery from a drug source city and to a drug target city, from and to a commercial mail receiving agency and the name and address of the recipient were handwritten); *United States v. Gomez*, 312 F.3d at 922, 924–25 (package was sent by Express Mail, unusually large for person-to-person mail, marked for delivery on a Saturday, mailed from a drug source city, heavily taped, had a handwritten label and "fragile" stamp on it and the sender and addressee had the same surname); *Demoss*, 279 F.3d at 636 (package was sent priority overnight, paid for in cash, taped excessively, had a heavy perfume smell coming from it and lacked telephone numbers associated with it).

Yodprasit argues that should I find Inspector Brandt lacked reasonable suspicion to seize the package because each factor he relied is consistent with lawful activity. *See* Doc. No. 50 at 3–4. The Eighth Circuit and the Supreme Court have expressly rejected this argument:

> Even where each factor cited by law enforcement to support a seizure is "not by itself proof of any illegal conduct and is quite consistent with innocent" activity, the sum of the factors taken together can amount to reasonable suspicion. [*United States v. Sokolow*, 490 U.S. 1, 9 (1989)]. That any one factor, viewed in isolation from the others, is "by itself readily susceptible to an innocent explanation" does not justify giving that factor no weight in the analysis. *United States v. Arvizu*, 534 U.S. 266, 274, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002). This sort of "divide-and-conquer analysis" has been expressly rejected by the Supreme Court. *Id.*

*Huerta*, 655 F.3d at 809. Yodprasit also argues that Inspector Brandt's testimony about what factors may indicate a package contains a controlled substance and which of those factors were present when he seized the package destined for Yodprasit cannot establish

reasonable suspicion without corroboration. Doc. No. 50 at 4. However, Yodprasit cites no legal authority in favor of this argument. None of the Eighth Circuit cases addressing whether a postal inspector had reasonable suspicion to seize a package required corroboration of an inspector's testimony that was based on his or her own training and experience. Instead, caselaw makes it clear that a postal inspector has reasonable suspicion to seize a package to subject it to a drug-dog sniff if, based on his or her training and experience, there are enough factors that fit the profile of a package containing a controlled substance. *See, e.g.*, *Huerta*, 655 F.3d at 809; *Lakoskey*, 462 F.3d at 976. Inspector Brandt had reasonable suspicion to seize the package mailed to Yodprasit's address because based on his training and experience, there were multiple indicators that the package contained narcotics.

### E.    *Reasonableness of Length of Seizure*

The parties have not objected to the portion of the R&R finding that the four-day delay between the initial seizure of the package on November 1, 2019, and the drug-dog sniff on November 5, 2019, did not render the seizure unreasonable. I have reviewed this finding for clear error. Judge Mahoney applied the appropriate legal standards in considering whether Inspector Brandt acted with reasonable diligence in conducting his investigation. Based on my review of the record, I find no error in Judge Mahoney's finding on the reasonableness of the length of the seizure.

### V.    CONCLUSION

For the reasons set for herein:

1.    Yodprasit's objections (Doc. No. 50) to the Report and Recommendation are **overruled**.

2.    The Government's objection (Doc. No. 51) to the Report and Recommendation (Doc. No. 49) is **overruled**.

3.    I **accept** the Report and Recommendation (Doc. No. 49) **without modification**.

4.    Pursuant to Judge Mahoney's recommendation, Yodprasit's motion (Doc. No. 25) to suppress is **denied**.

**IT IS SO ORDERED.**

**DATED** this 6th day of March, 2020.

_____
Leonard T. Strand, Chief Judge